IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. ANTHONY DINGUS (#R-44941), ) ) ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. 16 C 1875 |
| ) | |
| KIMBERLY BUTLER, Warden,[1] ) ) | |
| Respondent. ) | |

## MEMORANDUM OPINION AND ORDER

Anthony Dingus ("Dingus") has filed a 28 U.S.C. § 2254 ("Section 2254") Amended Petition for Writ of Habeas Corpus ("Petition")[2] to challenge his conviction for murder and the resultant 50 year sentence. In accordance with Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts ("Section 2254 Rules"), this Court promptly reviewed the Petition and its attachments. For the reasons stated in this memorandum opinion and order, Dingus' Petition is denied on all counts and this action is dismissed.

---

[1] Although Warden Butler was sued as the custodian of the petitioner when this action was filed, that role is now filled by Menard Correctional Center Warden Jeff Hutchinson, who is ordered to be substituted as the proper respondent (Fed. R. Civ. P. ("Rule") 25(d)).

[2] In fact, as stated later in the section captioned Procedural History, Dingus had initially filed a pro se Section 2254 petition. Because this Court found that the answer filed in response to his submission plainly posed issues with which layman Dingus could not reasonably be expected to cope, it enlisted an experienced criminal defense lawyer to file a reply on his behalf -- and that counsel expanded Dingus' originally asserted contentions in the Petition.

**Facts**

Section 2254(d) makes the state court's findings of fact presumptively correct in any federal habeas proceeding. In this instance the factual background stated in the Illinois Appellate Court's opinion on direct review (People v. Dingus, 2015 IL App. (1st) 132087-U, ¶ 18, appeal denied 39 N.E.3d 1006 (Ill. 2015)) reflects the record fully and fairly. That factual background will be summarized briefly here.

Dingus was charged with first degree murder, aggravated unlawful use of a weapon and reckless discharge of a firearm in connection with the May 25, 2002 shooting death of Raymond Delgado ("Delgado"). At the May 2005 jury trial Delgado's cousin Jason Soto ("Soto") testified that he went with Delgado to meet friends for a party. Soto said that he and Delgado went outside at about 2:30 a.m., heard an occupant in a car yell "Ambrose" and saw a bottle thrown from the car. Soto explained "Ambrose" was the name of a local gang.

Soto then said he saw an individual walk toward Delgado, and when the two were 5 to 10 feet apart Soto saw a flash of light and heard "two pops." Another friend called 9-1-1 as Soto waited with Delgado. Officers arrived on the scene to find Delgado lying on the ground next to Soto, with no weapon in sight.

Joseph Lopez ("Lopez") testified that a short time earlier he was drinking with friends, including Dingus, in the backyard of the Francisco Perez residence and that "something" caused them to leave the backyard. Lopez saw Perez holding a pink-handled chrome gun, with which he fired two warning shots as Delgado approached the group. Lopez testified that Perez then handed the gun to Dingus, who pointed the gun at Delgado and fired two shots, causing Delgado to fall to the ground. Dingus then handed the gun to Lopez, who testified that he then hid the gun in a pile of logs behind a garage and heard Dingus saying "I got him Maldonado." Lopez

explained that "Maldonado" is a member of the Ambrose gang.  Pablo Medina ("Medina") corroborated most of Lopez's testimony, adding that he heard Dingus say "Ambrose killer" as a statement of intent, although he said he never saw Dingus shoot Delgado.  Both Lopez and Medina were impeached with testimony they provided to the grand jury, but not as to Dingus' statements quoted in this paragraph -- as to those, their testimony before the grand jury was the same as that before the trial jury.

Dingus then testified that he fired the gun and then gave it to Lopez, denying that he said "Ambrose killer" before firing the shots.  Dingus was questioned on cross-examination as to the tear drop tattoos on his face, being asked several times if they signified that he had "done something" for his gang, which he denied.  There was one objection to the questioning, based on its repetitiveness.  Dingus argued that he fired the shots in self-defense, but he conceded that Delgado had not fired at him and that he had not warned Delgado that he was armed.

After the close of evidence and closing arguments, the jury found Dingus guilty of first degree murder and the trial court sentenced him to 50 years' imprisonment.  After the Illinois Appellate Court upheld the conviction and sentence on direct appeal, Dingus filed a petition for leave to appeal, which was denied.  Then over the next four years Dingus filed four versions of state post-conviction petitions with the help of multiple attorneys.  His final petition alleged both (1) ineffective assistance of trial counsel in several respects, including the failure to object to the questioning regarding Dingus' tear drop tattoos, and (2) ineffective assistance of appellate counsel due to that counsel's purported failure to argue, on direct appeal, trial counsel's constitutionally deficient performance.

In response the State filed a motion to dismiss the final amended petition, which the trial court granted. Dingus then appealed the decision, and the Illinois Appellate Court upheld the dismissal. Thereafter the Illinois Supreme Court again declined to hear the case.

**Procedural History**

On February 1, 2016 Dingus filed a pro se petition for a writ of habeas corpus. After then respondent Butler filed an answer to that motion, this Court appointed able and experienced counsel John Beal ("Beal") to act on Dingus' behalf and ordered a reply. On August 30, 2016 Beal filed the Section 2254 Petition on behalf of Dingus (choosing to file a superseding Petition with leave of this Court, rather than simply submitting a reply to respondent Butler's answer). That Petition set out three main contentions, first that the trial court erroneously barred Dingus from introducing evidence of prior acts of violence directed at him by Ambrose gang members, next that the trial court erroneously barred defense witness Tiffany Rynkiewicz ("Rynkiewicz") from testifying and lastly that Dingus' trial lawyer rendered ineffective assistance of counsel when he failed to object to cross examination of Dingus by the state's attorney about the tear drop tattoos. Attorney Beal also added as an overarching claim that the trial judge was assertedly biased throughout the proceedings in regard to jury tampering, sentencing and general attitude during the trial.

In response to the Petition, counsel for the respondent Warden asserted that all claims were procedurally defaulted except for the claim that Dingus' trial counsel had been ineffective in failing to object during the tear drop tattoos questioning. On that score the answer went on to argue that although the tear drop issue was adequately preserved, that claim has failed on its merits.

## **Procedural Framework**

Before any federal court can address the merits of a Section 2254 petition, the petitioner must have both exhausted state court remedies and avoided any procedural defaults (Bocian v. Godinez, 101 F.3d 465, 468 (7th Cir. 1996)). Claims are exhausted "by either (a) providing the highest court in the state a fair opportunity to consider the constitutional issue, or (b) having no further available means for pursuing review of one's conviction in state court" (Wallace v. Duckworth, 778 F.2d 1215, 1219 (7th Cir. 1985) (per curiam)). Because it is clear from the procedural history here that Dingus has satisfied the second of those alternatives, this opinion turns to the separate doctrine of procedural default.

While "failure to exhaust . . . refers only to issues that have not been presented to the state court but still may be presented" (Resnover v. Pearson, 965 F.2d 1453, 1458 (7th Cir. 1992)), procedural default occurs either (1) when a state court has declined to address a prisoner's federal claims because the prisoner failed to meet an independent and adequate state procedural requirement (Coleman v. Thompson, 501 U.S. 722, 729-30 (1991)) or (2) when a claim could have been but was not brought before a state court and can no longer be asserted in that forum (Resnover, 965 F.2d at 1458).

After being barred on procedural default grounds, a claim will not be cognizable in a federal habeas proceeding unless the petitioner can clear one of two hurdles established by Coleman, 501 U.S. at 750:

> We now make it explicit: In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

So it is necessary to determine at the outset which if any of Dingus' claims are procedurally defaulted and whether Dingus may avoid that bar to any such claims by demonstrating either cause and prejudice or a fundamental miscarriage of justice.

If a claim manages to survive the intricate procedural obstacles that may preclude relief as a threshold matter, it must then satisfy Section 2254(d)'s stringent standard for granting habeas claims that the state courts have considered and rejected on their merits:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Williams v. Taylor, 529 U.S. 362 (2000) has provided extensive input on the application of Section 2254(d) -- and see also Washington v. Smith, 219 F.3d 620, 627-28 (7th Cir. 2000) in that respect -- a subject to which this Court will return in the tear drop tattoos analysis.

Dingus has not challenged any determination of the facts as made by the Illinois courts. Instead he contends that he is the victim of several unreasonable applications of the law. Section 2254(d) provides only limited review of state decisions in that regard, for its "'unreasonableness' standard allows the state court's decision to stand if it is one of several equally plausible outcomes" (Hall v. Washington, 106 F.3d 742, 749 (7th Cir. 1997)).

This opinion turns now to consideration, through the necessary analytical filters, of each of the grounds that Dingus now advances as entitling him to federal habeas relief. It is not aided

in that respect by any attempted analysis in the Petition, because the total extent of Dingus' argument for preservation of the claims is the ipse dixit in Petition ¶ 21 that all claims "are fully preserved though the state court appellate process."   To the contrary, nothing in the record supports the preservation of most of the issues, nor has any argument been advanced to counter the principle of procedural default.  Instead this opinion finds, for the reasons stated below, that the record calls for the denial of Dingus' motion without further briefing.

### Claims Procedurally Defaulted

Dingus' arguments as to the trial court's asserted bias and its claimed erroneous exclusion of both (1) evidence of prior acts of violence directed at Dingus by Ambrose gang members and (2) testimony from Rynkiewicz can be dealt with first and in short compass, because all of those arguments are unquestionably defaulted procedurally.  That is so as to the bias claims because they were not raised on direct appeal, and as to the erroneous exclusion contentions because those were rejected on independent and adequate state grounds (see, e.g., Sturgeon v. Chandler, 552 F.3d 604, 611 (7th Cir. 2009)).

First, the claims of trial judge bias were simply not raised in the post-conviction filings and were thus not preserved for consideration by this Court.  And second, Dingus' state court arguments that the trial court erroneously excluded prior acts of violence from the Ambrose gang toward Dingus and the testimony from Rynkiewicz cited only state evidence law and state cases -- Dingus' counsel failed to cite federal evidence law, federal cases or the federal Constitution.  But as to the concept of independent and adequate state grounds as a basis for procedural default, Baldwin v. Reese, 541 U.S. 27, 29 (2004) teaches that a habeas petitioner must clearly articulate the federal constitutional and factual bases for each claim at each level of state court review to preserve the claims.  In sum, all of those claims are procedurally defaulted.

### Applicability of Procedural Default Exceptions

That is not necessarily the end of the matter, for there are exceptions to the procedural default rule that could possibly allow Dingus' claims to stand. As this opinion has said earlier, Coleman's first potential exception to a procedural bar requires Dingus to show both that he had cause for the default and that he suffered prejudice from the claimed constitutional violation. Here there is no need to look at any possible prejudice, for in any event no identifiable cause exists for not having preserved the issues. If any trial judge bias was at work (another hypothetical matter that need not be explored), it could readily have been raised at that time, just as opportunities were plentiful for Dingus to make federal arguments regarding unconstitutional exclusions of evidence.

Nor has Dingus shown that he would suffer from a "fundamental miscarriage of justice" because of a failure to entertain his due process claim. That second Coleman exception is limited to the "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent" (Schlup v. Delo, 513 U.S. 298, 321 (1995)). Dingus advances no claim of his actual innocence of the killing of Delgado (Steward v. Gilmore, 80 F.3d 1205, 1212 (7th Cir. 1996)), nor do his submissions suggest that.[3]

In sum, Dingus has not demonstrated either cause and prejudice or a fundamental miscarriage of justice to enable him to escape procedural default (see Perruquet v. Briley, 390 F.3d 505, 514-15 (7th Cir. 2004)). Those claims are thus denied without reaching their merits.

---

[3] There might perhaps be an argument (however attenuated) for self-defense on Dingus' part, but that was argued unsuccessfully in the trial court, with there being more than ample evidence for the jury to find that it was not the case for Dingus.

## **Teardrop Tattoo Issue**

That leaves for consideration only Dingus' claim that ineffective assistance of counsel was provided to Dingus by his trial lawyer when he failed to object to Dingus' cross examination by the state's attorney about two tear drop tattoos. And that contention, which seeks to relitigate a claim adjudicated by the state courts on the merits, must meet one of the two earlier-quoted strict requirements imposed by Congress in Section 2254(d). To come within the "contrary to" branch of the first alternative, Conner v. McBride, 375 F.3d 643, 649 (7th Cir. 2004) has cited the Supreme Court's Williams case to summarize the test:

> First, a state court decision is "contrary to" federal law if the state court either incorrectly laid out governing Supreme Court precedent, or, having identified the correct rule of law, decided a case differently than a materially factually indistinguishable Supreme Court case.

As for the "unreasonable application" requirement, Woods v. McBride, 430 F.3d 813, 817 (7th Cir. 2005) (with citation to Williams, the source of the internal quotation, omitted) states the demanding nature of the statutory test:

> In the habeas context, an "unreasonable" application is more than simply an "incorrect" application, so "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Rather, in order to trigger grant of the writ, the state-court decision must be both incorrect and unreasonable.

Indeed, the Supreme Court itself has more recently reemphasized the stringency of the statutory standards. Here is what Burt v. Titlow, 134 S. Ct. 10, 16 (2013)(citations omitted) says as to both Section 2254(d)(1) and Section 2254(d)(2):

> AEDPA requires "a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement." "If this standard is difficult to meet" -- and it is -- "that is because it was meant to be."

> We will not lightly conclude that a State's criminal justice system has experienced the "extreme malfunctio[n]" for which federal habeas relief is the remedy.

In this instance there is a similarly high preference for deference when evaluating whether a trial lawyer provided effective assistance. Under the seminal decision in <u>Strickland v. Washington</u>, 466 U.S. 668, 690 (1984) Dingus must demonstrate that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Counsel's actions are reviewed with the strong presumption "that, under the circumstances, the challenged action 'might be considered sound trial strategy'" (<u>id.</u> at 689, quoting <u>Michel v. Louisiana</u>, 350 U.S. 91, 101 (1955)). Even an unreasonable error on the part of counsel does not warrant setting aside a judgment "if the error had no effect on the judgment" (<u>id.</u> at 691).

Dingus contends that his trial counsel's failure to object sufficiently as to the prosecution's injection of the tear drop tattoos into the case sank to the level of unconstitutional deficiency because of the dangerous implication that Dingus had committed other crimes. <u>Strickland</u>, 466 U.S. at 690-91 calls for deference to strategic decisions by defense counsel, and here this Court is not going to second-guess counsel's choices of how often to object. In its response the State correctly points out that the decision not to object could have been reasonably explained through a fear of making a likely unsuccessful objection and biasing the jury or by a logical decision not to put extra stress on the tattoos.

Moreover, even if the performance of Dingus' counsel were to be viewed as deficient in that respect, there is no realistic prospect that it prejudiced the outcome of his trial. Evidence of his guilt was overwhelming, and any potentially available defenses were weak at best. And in light of the particularly stringent standard for finding the state appellate court's decision

unreasonable outlined previously, this Court must deny relief on the ground of ineffective trial counsel on multiple grounds.

## Conclusion

In sum, none of Dingus' contentions has survived analysis. This Court determines that no evidentiary hearing is required (see Section 2254 Rule 8(a)) and that "it plainly appears" that Dingus "is not entitled to relief in the district court" (Section 2254 Rule 4). Hence both the Petition and this action must be and are dismissed (id.), and this Court denies a certificate of appealability (Section 2254 Rule 11(a)). Dingus may seek such a certificate from the Court of Appeals under Fed. R. App. P. 22.

                                                        Milton I. Shadur
                                                        Senior United States District Judge

Date: November 2, 2016